UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jesse J. Dean, Jr.,**        ) <br>        ) <br>    **Plaintiff,**        ) <br>        ) <br>      v.        )     **Civil No. 14-cv-0715 (APM)** <br>        ) <br> **United States Department of Justice,** *et al.*,        ) <br>        ) <br>    **Defendant.**        ) <br>        ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this Freedom of Information Act ("FOIA") case, the court denied Defendants' initial motion for summary judgment based on Defendant Drug Enforcement Administration's ("DEA") decision to neither confirm nor deny the existence of records sought by Plaintiff Jesse J. Dean. *Dean v. U.S. Dep't of Justice*, 87 F. Supp. 3d 318 (D.D.C. 2015). Plaintiff defeated Defendants' motion by showing that the record he sought from the DEA—a "cooperating individual agreement," which he had signed with the DEA in 1991—in fact existed, because prosecutors had used that record at his trial to secure his conviction. *Id.* at 321. The court ordered the DEA to conduct a search for the requested record. *Id.* at 322.

Defendants again move for summary judgment, this time on the basis that the DEA has conducted an adequate search, yet was unable to locate the requested document. Defs.' Mot. for Summ. J., ECF No. 32. Upon consideration of the parties' submissions, the court finds that the search was indeed adequate. It therefore grants Defendants' motion for summary judgment for the reasons explained below.

## II. LEGAL STANDARD

The background of this case was previously recited and will not be repeated here. *See Dean*, 87 F. Supp. 3d at 319-20. An inadequate search for records constitutes an improper withholding under the FOIA. *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003). Hence, "a requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court[.]" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations omitted).

An agency seeking summary judgment on the search question bears the burden of showing that, even with the facts viewed in the light most favorable to the requester, the agency has conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To carry this burden, the agency may submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Production of such an affidavit allows a requester to challenge, and a court to assess, the adequacy of the search performed by the agency. *Id*. The agency's affidavits are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

## III. ANALYSIS

Defendants have proffered the declaration of Jeffrey Green, DEA Special Agent and Unit Chief of the Confidential Source Unit, Policy and Source Management Section, Office of Operations Management ("OMPI"). Declaration of Jeffrey Green, ECF No. 32-3, ¶¶ 1-2. Green is

2

an expert on matters such as the "maintenance, storage, retention and retrieval of files maintained by DEA related to confidential sources." *Id*. ¶ 4.

Green's declaration comprehensively explains the efforts undertaken by the DEA to locate the cooperation agreement sought by Plaintiff. Green attests that the Confidential Source System ("CSS") of the DEA's Operations Files is the record system reasonably likely to contain the requested document. *Id*. ¶¶ 6-8. The CSS "consists of a DEA wide computer-based management system known as the Confidential Source System Concord ("CSSC"), paper files maintained at the DEA field office(s) at which the source was active and, in this matter, a limited Headquarters file." *Id*. ¶ 8. CSS records are indexed and retrieved by a confidential source identifier code. Coded sources are identified in the computer system by "an individual's identifiers such as complete name, social security number, date of birth and/or confidential source identifier code." *Id*.

Green attests that a request was made to OMPI in May 2014 "to obtain a copy of the confidential source file and the confidential source agreement related to plaintiff. Using plaintiff's name, CSSC identified plaintiff's identifiers and office in which plaintiff would have been active." *Id*. ¶ 9. The search, conducted between May 19 and August 11, 2014, involved contacting personnel at the DEA field office in which Plaintiff would have been active. That field office "searched all places [where] the [confidential source] file would be stored[,] includ[ing] the safe in which [confidential source] files are maintained . . . [and the] archived file inventory," but was unable to locate a file on Plaintiff. *Id*. ¶¶ 10-11. In addition, OMPI contacted the Miami Field Division, "the parent office of the DEA field office in which plaintiff would have been active," which searched its file room and reviewed the archived file inventory, but was unable to locate a file on Plaintiff. *Id*. ¶¶ 12-13.

3

Unable to locate the requested document from the relevant field offices, OPMI took two additional search steps. First, OPMI staff retrieved from the National Records Center and searched "an archived box that had the proper numerical sequence of files that had been archived by the Miami Field Division." *Id.* ¶ 14. Second, OPMI obtained the "archived Headquarters file related to plaintiff . . . obtained from the National Records Center," which Green himself searched "by hand." *Id*. ¶ 15. Neither of these additional steps turned up Plaintiff's cooperation agreement.

Plaintiff argues against summary judgment on two primary grounds. First, he asserts that the DEA's inability to find the record is not credible when it clearly existed and was used against him at trial. Pl.'s Opp'n, ECF No. 36, at 9. "But it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007). Indeed, "[t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985). "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde*, 315 F.3d at 315. For that reason, the court's focus is on the appropriateness of the search methods instead of the search results, and it is why Defendants' summary judgment motion cannot be defeated by the mere failure to locate the requested document. *See id.* ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").

Next, Plaintiff contends that the DEA's search was inadequate because it failed to contact and interview personnel involved in his prosecution "who would have necessarily have had to

4

locate, access and retrieve" his cooperation agreement for use at his trial. Pl.'s Opp'n at 10. Specifically, Plaintiff identifies (1) the two Assistant United States Attorneys who prosecuted him; (2) a DEA agent and a U.S. Customs and Border Protection agent with whom he interacted when he first began his cooperation; and (3) a second DEA agent and an FBI agent who were the lead agents of the investigation that resulted in his conviction. *Id.* at 10-11. With respect to the non-DEA personnel, the DEA "had no responsibility under FOIA to make inquiries of other law enforcement agencies, such as the Justice Department, for documents no longer within its control or possession." *Valencia-Lucena*, 180 F.3d at 328. Thus, the DEA's failure to contact them does not render its search inadequate.

As for the DEA personnel, Plaintiff has failed to establish the "close nexus" or "undisputed connection" between the agents he has identified and the missing cooperation agreement, which otherwise would have warranted making an inquiry of them. *Id.* Plaintiff states that he "interacted" with DEA Special Agent David Howard Shelton in Nassau, Bahamas, when he first began his cooperation, and he surmises that "Shelton would have been briefed in preparation for his testimony in Plaintiff's trial." Pl.'s Opp'n at 10-11. As to DEA Special Agent Kevin Stephens, Plaintiff states only that Stephens and an FBI Special Agent "were the lead agents" in the investigation that resulted in Plaintiff's indictment and prosecution. *Id.* at 11. Such assertions fall well short of the "strong evidence" needed to show how the two DEA Special Agents "might have been helpful" in locating the cooperation agreement. *Iturralde*, 315 F.3d at 315.

This case differs from the primary case on which Plaintiff relies, *Valencia-Lucena*, 180 F.3d at 321. There, the Court of Appeals held that the Coast Guard had not performed an adequate search under FOIA for a logbook because it had failed to ask a specific member of the Coast Guard, a Lieutenant Nesel, about the logbook's whereabouts. The plaintiff in that case had been convicted

5

of drug trafficking, and Lieutenant Nesel was the captain of a Coast Guard ship that was involved in the drugs' seizure. Lieutenant Nesel testified at the plaintiff's trial and, according to the plaintiff, consulted a logbook during his testimony, which was admitted into evidence at trial. *Id.* at 324. The Court of Appeals held that the "undisputed connection between the missing logbook and Lieutenant Nesel should have led the Coast Guard to inquire of him as a source 'likely to turn up the information requested' regarding the missing logbook's whereabouts." *Id.* at 328 (citation omitted). Here, in sharp contrast, Plaintiff has not proffered any evidence in opposing summary judgment that establishes a similar connection between DEA Agents Shelton and Stephens and the missing cooperation agreement.

In any event, defense counsel has proffered that he has searched for all of the individuals Plaintiff claims that the DEA should have contacted, but none are current employees of the Department of Justice or the Department of Homeland Security or its component agency, U.S. Customs and Border Protection. *See* Defs.' Reply, ECF No. 37, at 3. The DEA is not required to undertake "fruitless" inquiries, such as when personnel are no longer employed by the agency and thus are highly unlikely to possess or control the missing record. *Valencia-Lucena*, 180 F.3d at 328.[1]

## IV. CONCLUSION

For the foregoing reasons, the court concludes that no material factual dispute exists with regard to the adequacy of DEA's search for responsive records and that Defendants, having located no responsive records after a reasonably calculated search, are entitled to judgment as a matter of

---

[1] The court is mindful that counsel's statements in a legal brief are not evidence. By signing the brief, however, counsel represents that "the factual contentions have [or will likely have] evidentiary support," Fed. R. Civ. P. 11(b), and the brief reflects a "proffer" of his diligent efforts, Defs.' Reply at 3. Compelling a proffer would only delay the inevitable grant of summary judgment to Defendants.

law. Accordingly, Plaintiff's contested application for costs, ECF No. 34, is denied. A separate order accompanies this Memorandum Opinion.

Date: October 30, 2015

Amit P. Mehta
United States District Judge